1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LISA A. CORNISH,

               Plaintiff,

     v.

JO ANNE B. BARNHART, Commissioner of
Social Security,

              Defendant.

CASE NO.     C05-5686RBL

REPORT AND
RECOMMENDATION

Noted for May 5, 2006

      Plaintiff, Lisa A. Cornish, has brought this matter for judicial review of the denial of her application

for disability insurance benefits.  This matter has been referred to the undersigned Magistrate Judge

pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by

Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the

remaining record, the undersigned submits the following Report and Recommendation for the Honorable

Ronald B. Leighton's review.

1

## FACTUAL AND PROCEDURAL HISTORY

2      Plaintiff currently is forty years old.[1] Tr. 29.  She has an eleventh grade education and past work

3  experience as a hairstylist, cosmetic salesperson and payroll clerk. Tr. 14, 74, 79.

4      On July 12, 2002, plaintiff filed an application for disability insurance benefits, alleging disability as

5  of August 16, 2001, due to problems with her neck and back, migraine headaches, panic attacks, and carpal

6  tunnel syndrome. Tr. 71A, 73.  That application was denied initially and on reconsideration. Tr. 29-30, 34,

7  39.  A hearing was held before an administrative law judge ("ALJ") on June 2, 2004, but was postponed to

8  a later date prior to any testimony being taken for the purpose of obtaining a psychological consultation and

9  updated medical records. Tr. 13, 280-88.  Another hearing was held before the same ALJ on November 22,

10  2004, at which plaintiff, represented by counsel, appeared and testified, as did a medical expert and a

11  vocational expert. Tr. 289-316.

12      On April 28, 2005, the ALJ issued a decision, determining plaintiff to be not disabled, finding

13  specifically in relevant part:

14      (1)  at step one of the disability evaluation process, plaintiff had not engaged in
           substantial gainful activity since August 16, 2001;

15

16      (2)  at step two, plaintiff had "severe" impairments consisting of depression, panic
           disorder, chronic pain syndrome, and degenerative joint disease;

17      (3)  at step three, none of plaintiff's impairments met or equaled the criteria of any of
           those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; and

18

19      (4)  at step four, plaintiff had the residual functional capacity to perform light work
           with certain additional exertional and non-exertional limitations, which did not
           preclude her from returning to her past relevant work as a salesperson.

20

Tr. 27.  Plaintiff's request for review was denied by the Appeals Council on August 19, 2005, making the

21  ALJ's decision the Commissioner's final decision. Tr. 5; 20 C.F.R. § 404.981.

22

23      On October 19, 2005, plaintiff filed a complaint in this Court seeking review of the ALJ's decision.

24  (Dkt. #1).  Specifically, plaintiff argues that decision should be reversed and remanded for further

administrative proceedings, for the following reasons:

25

26      (a)  the ALJ erred in not finding plaintiff's carpal tunnel syndrome to be a "severe"
           impairment; and

27

28 ─────────────
   [1]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access
   to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

1     (b)     the ALJ erred in finding plaintiff capable of returning to her past relevant work
as a salesperson.

For the reasons set forth below, the undersigned agrees the ALJ erred in determining plaintiff to be not

disabled, and thus recommends this matter be remanded to the Commissioner for further administrative

proceedings.

DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the

Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to

support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson

v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than

a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir.

1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than

one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d

577, 579 (9th Cir. 1984).

I.    The ALJ Properly Did Not Find Plaintiff's Carpal Tunnel Syndrome to Be "Severe"

To determine whether a claimant is entitled to disability benefits, the ALJ engages in a five-step

sequential evaluation process. 20 C.F.R. § 404.1520. At step two of that process, the ALJ must determine

if an impairment is "severe." Id. An impairment is "not severe" if it does not "significantly limit" a

claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), ( c);

Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and

aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more

than a minimal effect on an individual['·]s ability to work." See SSR 85-28, 1985 WL 56856 *3; Smolen v.

Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff

has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work

activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599,

601 (9th Cir. 1998). The step two inquiry described above, however, is a de minimis screening device used

to dispose of groundless claims. Smolen, 80 F.3d at 1290.

Plaintiff argues the ALJ erred in failing to find plaintiff's carpal tunnel syndrome to be a severe impairment. Such a finding, plaintiff asserts, is supported by her own testimony concerning the use of her hands and the observations of her husband regarding her need to stop and take breaks with anything that requires physical motion. See Tr. 73, 107, 126. The undersigned disagrees. First, the ALJ found plaintiff to be not credible regarding her symptoms and inability to work (Tr. 25, 27), a finding which plaintiff has not challenged here. Second, the statement by plaintiff's husband concerns her ability to move physically and tolerate pain in general, and not her carpal tunnel syndrome. See Tr. 126.

The objective medical evidence in the record, furthermore, fails to support plaintiff's assertion that her carpal tunnel syndrome was a severe impairment (i.e., that it had more than a minimal effect on her ability to do basic work activities) at any time during the relevant time period. For example, a late June 2001 examination revealed normal grip and dorsiflexor strength in both of her hands, with no atrophy or decreased sensation to fine touch, although "there was decreased sensation to pinprick in the forefingers." Tr. 246. Carpal tunnel syndrome was ruled out. Tr. 247. Although plaintiff was diagnosed with possible carpal tunnel syndrome in late August 2001, she was found to have full motor strength in her hands and arms. Tr. 186. Further, while she was released from work at that time due to "her back pain and difficulty with her hands," this determination appeared to have been largely premised on her own subjective report. Id. Indeed, one week later, carpal tunnel syndrome again was ruled out. Tr. 185.

In early June 2002, plaintiff was found to have tingling in the first to fourth fingers bilaterally, and was diagnosed with "[r]epetitive motion injury with probable bilateral carpal tunnel syndrome." Tr. 181. No work-related limitations, however, were noted at that time. In mid-August 2002, plaintiff was found to have full muscle strength and intact sensation in her upper extremities, although probable carpal tunnel syndrome was diagnosed based on her past medical records and clinical history. Tr. 178. In mid-October 2002, a physical residual functional capacity assessment form completed by a non-examining consulting physician indicated that plaintiff had no manipulative limitations. Tr. 199.

In late March 2003, plaintiff was diagnosed with a "suspicion of bilateral carpal tunnel syndrome," but no impairment rating was provided. Tr. 237. During an early May 2003 physical examination, plaintiff demonstrated full upper extremity strength. Tr. 241-42. No diagnosis of carpal tunnel syndrome was made, it was felt she would not have "any apparent restriction" based on her examination, and she was considered

1  to be "medically fixed and stable." Tr. 244-45.  A nerve conduction study performed in late May 2003,

2  revealed the presence of "mild right carpal tunnel compression." Tr. 261, 278.  However, there was "no

3  evidence of left carpal tunnel compression" or "underlying polyneuropathy." Tr. 279.

4        While plaintiff was diagnosed with bilateral carpal tunnel syndrome in early August 2004, she was

5  found to have full range of motion of her fingers, thumbs and wrists, with no evidence of muscle atrophy or

6  weakness. Tr. 273.  The same findings were made in late September 2004. Tr. 275.  In early October 2004,

7  plaintiff reported "significant benefit" after receiving an injection into her left carpal tunnel, and she was

8  noted then, and again following carpal tunnel surgery in early December 2004, surgery to be "doing a good

9  job with mobilization" of each hand. Tr. 269, 272.  An examination of both hands done in mid-November

10  2004, again revealed unremarkable findings. Tr. 269.  In early February 2005, plaintiff reported "doing well

11  with both hands," with full range of motion of her fingers, thumbs and wrists. Tr. 268.  Although her left

12  hand still had "some sensitivity," her right hand was "now doing great." Id.  It further was noted that

13  plaintiff remained "off work related to other disabilities than her hands." Id.

14  II.    The ALJ Did Not Err in Assessing Plaintiff's Residual Functional Capacity

15        If a disability determination "cannot be made on the basis of medical factors alone at step three of

16  the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and

17  assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A

18  claimant's residual functional capacity assessment is used at step four of the disability evaluation process to

19  determine whether he or she can do his or her past relevant work, and at step five of that process to

20  determine whether he or she can do other work. Id.  It thus is what the claimant "can still do despite his or

21  her limitations." Id.

22        A claimant's residual functional capacity is the maximum amount of work the claimant is able to

23  perform based on all of the relevant evidence in the record. Id.  However, a claimant's inability to work

24  must result from his or her "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those

25  limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a

26  claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-

27  related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the

28  medical or other evidence." Id. at *7.

Plaintiff argues that even if her carpal tunnel syndrome properly was found to be not severe, the ALJ erred in failing to incorporate any limitations from that impairment into his assessment of her residual functional capacity for the two-year period prior to her carpal tunnel surgery in late 2004. As discussed above, however, the objective medical evidence in the record fails to show she had any significant work-related limitations due to her carpal tunnel syndrome at any time during that period. Also as discussed above, because she has not challenged the ALJ's credibility determination, her subjective testimony does not form a proper basis for overturning his residual functional capacity assessment. The same is true with respect to the statement from plaintiff's husband regarding her general physical limitations.

III.    The ALJ Failed to Properly Evaluate Whether Plaintiff's Past Relevant Work Was Substantial Gainful Activity

Plaintiff argues the ALJ erred in finding she could return to her past relevant work as a salesperson, because he failed to properly determine whether that work qualified as "substantial gainful activity." The undersigned agrees. The record indicates that plaintiff worked as a salesperson for Nordstrom during the year 1990. Tr. 74. Plaintiff reported that she worked three hours a day for three days a week at this job, and earned $300.00 per month.[2] Tr. 74. Thus it appears she performed that job on only a part-time basis. Plaintiff also described her job function as requiring standing, demonstrating and holding "beauty product" for two to four hours. Tr. 102.

Part-time work may be substantial gainful activity even though the claimant's earnings averaged less than the monthly amounts set forth in the Social Security Regulations. Pursuant to those regulations, if during the years 1990 through 2000, a claimant's earnings averaged less than $300.00 per month, the Commissioner will generally consider those earnings to show the claimant has not engaged in substantial gainful activity. 20 C.F.R. §§ 404.1574(b)(3), 416.974(b)(3). On the other hand, if a claimant's earnings averaged greater than $500.00 per month during the months January 1990 through June 1999, this will "ordinarily show" the claimant has engaged in substantial gainful activity. 20 C.F.R. §§ 404.1574(b)(2), 416.974(b)(2). These threshold earnings levels, however, are only presumptions that a claimant is or is not

---

[2] Defendant argues plaintiff's earnings report indicates she earned $5,570.66 in 1990, for an average of $464.22 per month. Tr. 71F. Plaintiff argues this figure is inaccurate, because the record shows she reported also working as a hairstylist during that year. Tr. 74, 97. As such, there appears to be some question as to whether plaintiff performed both of these jobs during the same period. As explained below, however, regardless of whether the $300.00 monthly earnings or the $464.22 monthly earnings is used, the ALJ failed to properly determine whether plaintiff's job as salesperson was substantial gainful activity.

1   able to engage in substantial gainful activity.

2       A claimant's earnings, in other words, "are not the end of the inquiry." Soria v. Callahan, 16 F.

3   Supp.2d 1145, 1149 (C.D. Cal. 1997). "Substantial work activity" is defined "as work that 'involves doing

4   significant physical or mental activities' and 'is the kind of work usually done for pay or profit.'" Id.

5   (quoting 20 C.F.R. § 416.972(a), (b)).  Thus, "'[w]ork may be substantial even if it is done on a part-time

6   basis.'" Id. (quoting Byington v. Chater, 76 F.3d 246, 250 (9th Cir. 1996)).  In addition, "'[w]ork activity is

7   gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.'" Id. at

8   1150 (quoting 20 C.F.R. §§ 404.1572(b), 416.972(b)).  If a claimant's duties require use of his or her

9   "experience, skills, supervision and responsibilities," or those duties "contribute substantially to the

10   operation of a business," this also tends to show the claimant has "the ability to work at the substantial

11   gainful activity level." 20 C.F.R. §§ 404.1573(a), 416.973(a).

12       Defendant argues that because plaintiff's average monthly earnings while performing her the job of

13   salesperson was not less than $300.00 per month, those earnings would be considered substantial gainful

14   activity.  As discussed above, however, when a claimant's earnings for the same time period is also less than

15   $500.00 per month, the claimant's earnings "are not the end of the inquiry." Soria, 16 F. Supp.2d at 1149.

16   Indeed, in such cases, "the provisions of 20 C.F.R. § 404.1574(b)(6) must be applied," under which "further

17   inquiry will be made to determine whether work activities rise to the level of substantial gainful activity." Id.

18   at 1150 (quoting Byington, 76 F.3d at 250).  That includes consideration of information as to whether the

19   claimant's work "is comparable to that of unimpaired people" in the claimant's community, "who are doing

20   the same or similar occupations as their means of livelihood, taking into account the time, energy, skill, and

21   responsibility involved in the work." 20 C.F.R. § 404.1574(b)(6)(iii).

22       Thus, while plaintiff has the burden at step four of the disability evaluation process to show that she

23   is unable to return to her past relevant work (Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)), the

24   Social Security Regulations clearly require the ALJ to inquire further into whether her past relevant work is

25   substantial gainful activity when earnings alone are inconclusive on this issue.  However, it does not appear

26   that the ALJ did so in this case.  For example, the vocational expert provided no testimony as to whether

27   the manner in which plaintiff performed her prior salesperson work was comparable to that of unimpaired

28   people in her community.  Indeed, the only testimony the vocational expert gave was that the salesperson

job could "still fall within" the functional limitations the ALJ placed on her. Tr. 311-12.

REPORT AND RECOMMENDATION
Page - 7

There also is no indication in the record that the ALJ even considered substantial gainful activity to be an issue at this stage of the disability evaluation process.  Accordingly, on remand, the Commissioner shall determine whether plaintiff's past relevant work as a salesperson was substantial gainful activity.  If the Commissioner finds it does not constitute substantial gainful activity, she also shall proceed on to step five of the disability evaluation process to determine whether plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

IV.     This Matter Should Be Remanded to the Commissioner for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).  Because, as discussed above, issues remain concerning whether plaintiff is capable of returning to her past relevant work, this matter should be remanded to the Commissioner for further administrative proceedings.

CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those

objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **May 5, 2006**, as noted in the caption.

DATED this 13th day of April, 2006.

Karen L. Strombom
United States Magistrate Judge